## Whitehead's Adm'r v. Peter Knopf's Sons.

(Decided Feb. 4, 1936.)

W. A. ARMSTRONG for appellant.

O'NEAL & O'NEAL and JOSEPH S. LAWTON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

494

On the night of February 3, 1934, at about 6:30 p. m. C. C. Whitehead was struck and killed by a motortruck of appellee, defendant below, being operated by T. J. Maydwell. G. C. Whitehead was appointed administrator of the estate of the deceased and brought this suit to recover of defendant for the wrongful death of his decedent. The trial resulted in a verdict and judgment in favor of defendant, and to reverse that judgment the administrator has prosecuted this appeal.

In brief for the appellant, the following is insisted on for reversal of the judgment: (1) Because the verdict is flagrantly against the evidence; (2) the instructions are erroneous; and (3) the admission of incompetent evidence for the defendant. We will refer to the parties as plaintiff and defendant according to their respective status in the lower court.

The accident occurred near the intersection of Frankfort avenue and Galt avenue in the city of Louisville, Ky. Frankfort avenue runs east and west and Galt avenue runs north and south and crosses Frankfort avenue. Plaintiff's theory of the case is that Whitehead was struck while crossing the street at the intersection on the west crosswalk of Galt and dragged about 100 feet west to the place he was picked up; but defendant contends that Whitehead was struck while crossing the street approximately 100 feet west of the intersection. Just previous to the accident decedent was in a Piggly-Wiggly store on the southwest corner of Frankfort avenue and Galt avenue. W. E. Conrad testified that he was in the store with Whitehead and he and Whitehead came out of the store together and Conrad started west on Frankfort avenue and left Whitehead talking to a colored man just in front of the store. When Conrad was about halfway between the block west of Galt avenue and the next street he heard a "terrific crash—just like metal coming together," and he turned and went back to the place where they picked up Whitehead a distance of between 75 and 100 feet below (west) of the intersection of the streets. Another witness testified that he lived about three doors from the Piggly-Wiggly store and was in the kitchen of his home eating supper when he heard a terrific noise from the street and he immediately went outside and noticed two men running back to the body of Whitehead, and the truck which had struck him was 70 or 75 feet west from the body.

The right headlight of the truck was bent up—almost perpendicular. At that time he heard the driver of the truck say, "I never saw the old man" (referring to the deceased). James Brown, a colored man, testified that he saw Whitehead in the store immediately before the accident and waited to talk to him about a business matter and Whitehead came from the store with another man who went west on Frankfort avenue and he then talked to Whitehead near the telephone pole just west of the corner and opposite the walkway crossing Frankfort avenue, the usual walkway for pedestrians, and when he and Whitehead parted he saw him start "right square across the street," and when he, witness, had crossed Galt avenue and gotten a few steps away from the corner he heard the crash. He immediately went to the scene of the accident and saw Whitehead's body lying about 75 feet below (west) of the intersection. At that time he heard the driver of the truck say, "What on earth happened here?" and also said that he "did not see the old man."

Mayswell, the driver of the truck, was the only eyewitness to the accident. He related how the accident happened as follows:

"Well, I was coming west on Frankfort Avenue, and it was pretty dark. It was around six thirty in the evening, and I got right past the intersection of Galt and Frankfort, it must have been around a hundred feet below the intersection and the man was dressed in dark, and the first thing I saw of him, I was not as far as from here to the other side of the desk away from him, and he was running from the south side of the street to the north side of the street. I never saw him until he got in the bead of my left headlight. When he got to the bead of the left headlight I swerved to the left to try to avoid him so that he could run across the street and the right side of my truck, by the right headlight hit him. The bumper hit his leg here and this arm, and he had some toilet-paper in his arm. That hit the headlight and went through the headlight and the headlight was bent back. * * *"

He also said that Whitehead was between five and eight feet in front of his car at the time he saw him. He further testified that decedent's false teeth and broken glass of the headlight were found on the street

within a few feet of the place where the truck stopped, and there were marks on the street indicating skid marks 10 or 12 feet long where his car had skidded when he applied the brakes. Other witnesses testified that they saw Whitehead's hat, false teeth, some paper and broken glass and skid marks of the car 100 or 110 feet west of the intersection, indicating that the accident happened there. It is further shown that at the time the accident happened it was very dark and some distance from the street lights. From this resume of the evidence it will readily be seen that it is amply sufficient to support the finding of the jury, and there is no merit in the contention that the verdict is flagrantly against the evidence.

The incompetent evidence complained of is that when Mrs. Shupert, a witness for defendant, took the witness stand, counsel for plaintiff informed the court that he had been informed that counsel for defendant would attempt to prove by this witness prior habits, customs, and practices of Whitehead in crossing the street, and asked the court to admonish counsel not to attempt to introduce any such evidence, which the court refused to do, and said, "We will wait and see what the build-up is." In the course of the examination of the witness, counsel asked: "Now did you see Whitehead often or not before?" She answered: "Oh, yes, he used to go through my lawn and across the street in front of my lawn lots of times. I have a driveway, going through the lawn and he used to go from the church, go across Frankfort Avenue, you understand, because it was nearer." Plaintiff's counsel objected to the above question and answer, and the court sustained the objection and admonished the jury not to consider it. It is insisted that this evidence was prejudicial, notwithstanding the admonition of the court. Counsel did not ask the witness about habits and customs of Whitehead in crossing the street, and the question asked could have been answered by the witness by "Yes," or "No," without making the detailed statement she voluntarily made. If the evidence was close or doubtful as to whether Whitehead was struck at the crossing at the intersection or at the location claimed by defendant, there might be some merit in appellant's contention that it was prejudicial. But we find that the evidence shows that Whitehead was struck at the location claimed by defendant.

The only eyewitness to the accident testified that it happened about 100 feet west of the intersection, and he is abundantly corroborated by all the physical facts, and this evidence is contradicted only by circumstances sufficient only to raise the presumption that the accident occurred at the intersection but for the positive and direct evidence to the contrary, which overcame any such presumption. Webber's Adm'r v. Louisville & N. R. Co., 261 Ky. 257, 87 S. W. (2d) 348. In these circumstances the witness' answer could not have been prejudicial.

The next complaint is directed to the instructions. It is insisted that the court should have instructed the jury that it was the duty of the owner of the truck to have two lighted lamps in front with sufficient power to clearly reveal substantial objects at least 200 feet ahead as provided in section 2739g-24, Kentucky Statutes, as amended by Acts 1932, c. 105. The driver of the truck testified on direct examination that the lights of his truck would clearly reveal objects a distance of 150 feet ahead, and it is insisted that this distance was not in compliance with the statutes. The necessity of an instruction depends largely upon the evidence, and there is no evidence tending to show that if the lights had been sufficient to have revealed an object 200 feet ahead instead of 150 feet, the accident would not have occurred. However, on cross-examination he said that the lights were sufficient to reveal objects 200 feet ahead. He further testified that the decedent approached his car from the left, running across the street, and appeared directly in front of his left headlight, a distance of between five and eight feet of the truck before he saw him, and this evidence is uncontradicted. There being no evidence tending to show that the insufficiency of the lights, if they were insufficient, was the proximate cause of the accident, hence the failure of the court to instruct on that subject was not prejudicial. It is also insisted that instruction No. 3 given by the court was in part erroneous. It reads:

"If you believe from the evidence that he crossed Frankfort Avenue at a point other than the designated crossing place, then it became his duty to exercise such increased care, as you may believe from the evidence was required by any increased danger. * * *"

It is insisted that this form of instruction was condemned in the case of Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S. W. 590, 591, in that it required of the plaintiff the exercise of a greater degree of care than a person of ordinary prudence would usually exercise under like circumstances. The court said: "We do not think the court meant this; but, to avoid any misapprehension on another trial," the court will give the following instruction:

"If it is more dangerous to cross a street between intersections than at the intersection a person, so crossing the street should exercise such increased care in proportion to the increased danger, as a person of ordinary care and prudence would ordinarily exercise under like circumstances."

The only difference between the given instruction and the one directed to be given, the latter includes the words *"as a person of ordinary care and prudence would ordinarily exercise under like circumstances."* (Our italics.) This language was not included in the particular instruction complained of in the present case, but we find that the court defined the term "ordinary care" as used in the instructions to mean that degree of care that is usually exercised by ordinarily careful and prudent persons under the same or similar circumstances.

In Louisville R. Co. v. Breeden, 257 Ky. 95, 77 S. W. (2d) 368, 372, there was involved an instruction similar to the one in the present case, and it was insisted that the instruction was erroneous because it failed to include the phrase "as a person of ordinary care and prudence would ordinarily exercise under like circumstances," and in support of the criticism Ross v. Louisville Taxicab & Transfer Co., supra, and Cundiff v. Nave, 240 Ky. 47, 39 S. W. (2d) 471, were relied on. It was held that inasmuch as the court defined the terms "ordinary care" and "negligence," the instruction was substantially correct. The court said:

"With these defined terms, when all of the instructions given by the court are read together, the criticism of instruction No. 2 is not well taken. Because we directed the given instruction in the Ross Case to include the suggested amendment and approved the one given in the Cundiff Case,

containing the same phrase, it should not be understood that the failure to include the identical language of those instructions in a future case would constitute a reversible error, where equivalent words are used.''

Furthermore, it will be noticed that in the Ross Case the instruction complained of was not held to be prejudicial or reversible error, but the court merely suggested a different form to avoid possible confusion on another trial. The case was reversed because the court refused to give a last clear chance instruction, it appearing that there was abundant proof to warrant the conclusion that the chauffeur could have seen the plaintiff in time to avoid striking him. We think that case is conclusive of the instruction complained of in the present case.

It is also insisted that instruction No. 4 was erroneous in that it was not qualified by a last clear chance instruction, and in support of this insistence the Ross Case, supra, is relied on. A sufficient answer to this complaint is that no such instruction was offered. If the court on its own motion instructs on an issue, it must give a correct one, but this does not mean that the court must voluntarily instruct on all issues of the case unless it is requested to do so. But aside from the reason that no instruction was offered, we do not think the evidence warranted such instruction. The same reasoning we applied with reference to the necessity of headlights revealing a person or objects the required statutory distance, is applicable to the last clear chance instruction, it appearing that the deceased suddenly appeared within five to eight feet of the truck before he was discovered by the driver, and, unlike the Ross Case, there was no evidence tending to show that the driver of the truck saw or could have seen him in time to avoid striking him.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.