## Osborne et al. v. Durbin et al.

Jan. 25, 1946.

John W. Walker and J. M. Wolfinbarger for appellants.

Shumate & Shumate and Ezart Ashcraft for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Jake ·Osborne and the other owners of a farm of 116 acres in Estill County brought suit against J. M. Durbin and J. D. Crabtree, who held an oil lease on this farm, to recover $1003 under the terms of the lease for delay in drilling thereon. The plaintiffs in that action sued out a general order of attachment which was levied upon the drilling machine and equipment of Durbin & Crabtree. They recovered judgment for $745, the attachment was sustained and the attached property was ordered to be sold, but the judgment was superseded

and on appeal was reversed and we held that the plaintiffs had no cause of action. Durbin v. Osborne, 292 Ky. 464, 166 S. W. 2d 841.

After the judgment was entered on the mandate dismissing the petition and discharging the attachment, Durbin and Crabtree instituted this action against Jake Osborne and Tom Crouch, the principal and surety on the attachment bond, to recover $1220 for the wrongful attachment of their property. A jury trial resulted in a verdict for plaintiffs for $500 and defendants seek a reversal of the judgment on ten grounds, which may be reduced to five: 1. A general demurrer should have been sustained to the petition. 2. A verdict should have been directed for defendants as the sheriff never levied the attachment upon or deprived plaintiffs of the possession of their property. 3. The verdict is excessive. 4. Incompetent evidence was admitted. 5. The instructions are erroneous.

It is argued that the petition is defective in that it pleaded the sheriff's return which shows that the drilling machine and equipment were never levied upon and that the sheriff left same on the Osborne lease. The sheriff's return on the attachment reads:

"Executed April 25, 1940, by delivering a true copy of the within order of attachment to J. D. Crabtree and by attaching one drilling machine and equipment, leaving same on the farm of Robert Osborne, itemized list attached."

Defendants insist that this return does not show that the sheriff ever took the property into his possession and to constitute a lawful attachment it was necessary for that officer to do some act for which he could be successfully prosecuted as a trespasser if it were not for the protection afforded him by the writ under which he was acting.

It is true that the attaching officer must take possession of the property in such a manner as to constitute a trespass if he were not acting under the writ. But this does not mean that he must take manual possession of the property. It is sufficient if at the time of the levy the property be under the sheriff's control or dominion and that he indicate the levy by word or deed or by showing it in his return on the writ. It is not necessary

to the validity of an attachment that the sheriff remove bulky property, or property difficult of removal, from the place in which it is found. 4 Am. Jur., Attachment and Garnishment, secs. 540 and 537, pp. 880 and 877; Hill v. Harris, 10 B. Mon. 120, 49 Ky. 120, 50 Am. Dec. 542.

It would have been better form had the return read: "* * * by levying upon and taking possession of one drilling machine and equipment, as shown by the itemized list attached, and leaving same on the farm of Robert Osborne," rather than by wording it as the sheriff did in his return set out above. Yet, in substance there is very little difference in the return as actually made and as we say it should have been made. The sheriff took control of this cumbersome machinery, although he left it on the lease in the actual possession of the present plaintiffs, and as his return in effect noted this action on his part we hold that the order of attachment was levied upon the machine and equipment.

The evidence is conflicting as to the rental value of this drilling rig. According to the evidence for the plaintiffs the rig did good work and its rental value was from $15 to $25 per day. The evidence on behalf of defendants was that the machine was worthless and had no rental value. Clearly, therefore, the value of the use of the machine, or its rental value, was a question for the jury.

Defendants argue that plaintiffs did not show that they could have operated this machine at a profit and that from the evidence it was highly speculative whether or not they could have, hence no recovery should be allowed in such circumstances. It would appear that defendants lose sight of the fact that this is not an action to recover profits lost by reason of the machine being attached, but is brought upon the attachment bond for the loss of the use of the machine during the period its owners were prevented by the levy of the attachment from using it.

Relying upon the case of Carr v. Wood, 103 S. W. 314, 31 Ky. Law Rep. 708, defendants insist that plaintiffs' damage for the loss of the use of the machine cannot exceed the value of the machine, which they contend the evidence shows was $300. But Durbin testified

the machine was worth $700 and if the jury accepted his testimony, the verdict does not exceed the value of the machine.

The drilling rig was held under attachment from April 25, 1940, until in February, 1943, when judgment was entered on the mandate reversing the original judgment which sustained the attachment and allowed Osborne a recovery of $745 against Durbin and Crabtree. It was testified by Durbin that he used the rig on the Osborne lease after it was attached, hence he cannot recover for the loss of the use of the rig on this lease. He further testified that just prior to the time Jake Osborne made an affidavit on Oct. 25, 1941, asking a rule against him, he started to remove the rig to Granny Richardson's to drill a well for himself and J. P. Perry, and that the attachment prevented him from removing it. As plaintiffs were thus deprived of the use of their rig from October 25, 1941, until February 1943, we cannot say under the facts presented in this record that the verdict of $500 is excessive for the loss of the use of the rig for that length of time.

The incompetent evidence complained of is that Durbin testified he was prevented from removing the machine by the Judge of the Estill Circuit Court, and defendants insist that the Judge made no order preventing the removal of the machine. It is true that a court may only speak through its orders, but there is filed in this record an affidavit of Jake Osborne to the effect that Durbin had sold or disposed of the attached property and asked that a rule be issued against him. Thereupon, the court entered an order directing Durbin to appear and show cause why he should not be punished for contempt. Certainly, it was competent for Durbin to testify that this rule issued by the court deterred him from removing the attached property from the Osborne lease.

The criticism of the instructions is not well taken. The defendants argue that the jury should have been told to exclude the time during which plaintiffs rendered the machine useless by voluntarily disposing of the equipment and not to allow any damages for the loss of the use of the machine during such interim. In the first place, there is no testimony upon which to base such an instruction. Durbin testified he loaned some

of the equipment to friends but could have gotten it back immediately upon the release of the machine. In the second place, the instruction was good so far as it went and if defendants desired an instruction covering the point that plaintiffs were not entitled to recover damages for the time during which the machine was not capable of being used, due to their lending the equipment, they should have offered such an instruction. It is true that when the court gives an instruction sua sponte (as he did here) it is incumbent upon him to correctly instruct, but this does not mean that he must instruct on all issues in the case unless requested to do so. Whitehead's Adm'r v. Peter Knopf's Sons, 262 Ky. 493, 90 S. W. 2d 709, 712.

The judgment is affirmed.