# Collis v. Hoskins.

January 23, 1948.

Chester D. Adams, Judge.

392.

Harry B. Miller and George T. Ross for appellant.

Carl F. Eversole and John B. Eversole for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—
Affirming.

Appellee, Hampton Hoskins, sued appellant, Harry Collis, for $5,500 damages caused him for the loss of services of his infant daughter by reason of the alleged seduction of the girl by appellant. The answer was a general denial. The trial resulted in a verdict for appellee for $1,000 and this appeal is prosecuted from the judgment entered thereon.

In asking that the judgment be reversed appellant insists: 1. A verdict should have been directed in his favor; 2. incompetent and prejudicial evidence was admitted over his objection; 3. the instructions are erroneous.

Appellant argues that he is entitled to a directed verdict on two grounds. First, the verdict is not supported by the evidence. Second, the evidence shows that appellee had emancipated his daughter prior to the alleged seduction and as he brought this action under the common law and not under KRS 411.030, he cannot recover for her seduction without averring and proving that he suffered damages by reason of the loss of her services, which could not have occurred had she been emancipated. We will now discuss the first ground; whether or not the verdict is supported by the evidence.

The testimony of the girl, Alice Hoskins, is that in August 1945 she went to work for appellant in a restaurant he operated in Lexington as a waitress when slightly over 18 years of age. That at the time she was employed by appellant she was a virgin but he soon started taking her out on dates representing himself to be unmarried, made gifts of money and clothes to her and promised to marry her if she would submit to him. She succumbed to his wiles, had intercourse with him

in August and they continued their intimacies until some time in the following November, when she became pregnant and asked him to marry her. Collis refused to marry Alice, saying he was a married man and she could do nothing about it.

The testimony of Collis and that of his witnesses is directly in conflict with that of Alice. Collis testified he had never been out with her and that she knew he was married while she was working in his restaurant and had met his wife and children. He further testified that Alice carried and showed a picture of a child some 18 months or 2 years of age, saying it was her child by a soldier whom she was going to marry; that he discharged Alice in November because of an argument she had with his cook and she even threatened to get even with him and to make him pay. Furthermore, Alice told her nurse when her baby was born on Aug. 1, 1946, that a man named Joe Connital was her husband and the father of her child.

Collis is corroborated in his testimony by several of his employees and some of his friends as to Alice showing a picture of a young child and admitting she gave birth to an illegitimate child before starting to work for Collis and as to her threats when discharged to get even with him. But the father and mother of Alice both support her and testified that she never had a child before starting to work for Collis. Mrs. Hoskins testified that it was she and not Alice who gave the information to the nurse that the father of the child was Joe Connital which Alice now claims was begotten by Collis. However, Mrs. Hoskins testified that the information she gave the nurse was obtained from her daughter.

We will not go into the intimate or sordid details of the evidence, but will content ourselves by saying that it is directly contradictory. If Alice and her parents are to be believed, she was seduced by Collis. If the testimony of Collis and his witnesses is accepted, then he is the victim of an unchaste and designing girl. It is evident that in the circumstances it was the province of the jury to pass on the credibility of the witnesses and the weight to be given their testimony. In Peyton v. Commonwealth, 288 Ky. 601, 157 S. W. 2d 106, 110,

it was written that a conviction may be had on a charge of seduction upon the testimony of the prosecutrix alone. If that be true in a criminal case where the jury must believe beyond a reasonable doubt that the man seduced the girl, a fortiori a verdict in a civil case for seduction cannot be flagrantly against the evidence merely because evidence introduced on behalf of the man is diametrically opposed to that introduced on behalf of the girl.

This action was not brought under KRS 411.030 which provides that an action may be maintained for seduction without any allegation or proof of the loss of the services of the girl by reason of the wrongful act of the defendant. It was brought under the common law, which makes it necessary for the plaintiff to establish some right to the services of the one seduced and to allege and prove the loss of her services; however, slight evidence of the loss of services is all that is required. Kelly v. Combs, 229 Ky. 502, 17 S. W. 2d 435.

Collis contends this record shows that Alice had been impliedly emancipated by her father, inasmuch as she had been earning her living and retaining her wages with the father's consent a year prior to the act of which complaint is made; that although the father's petition contained the allegation that he was entitled to her wages, his proof showed he never claimed Alice's wages, but on the contrary paid her while she worked for him in busy times on the farm. Appellee counters with the argument that emancipation is an affirmative defense and as appellant did not plead or rely upon it in the trial court, he cannot raise it for the first time here. Appellant insists that under his general denial he is entitled to raise the question of emancipation.

The emancipation of Alice would have been a bar to her father's action under the common law because he could have no claim to her services had she been emancipated. It was an affirmative defense and if appellant desired to rely upon it, he should have pleaded it. 41 Am. Jur., Pleading, sec. 155, p. 400; General Exchange Ins. Corp. v. Branham, 296 Ky. 711, 178 S. W. 2d 409. It was written in 39 Am. Jur., Parent and Child, sec. 82, p. 727, that one relying upon emancipation must plead and prove it since it is a question for the jury.

It is our conclusion that if appellant desired to rely upon the emancipation of Alice as a defense to her father's action, he should have set it up in his answer and have proved it on the trial.

If it be admitted arguendo that Alice had been impliedly emancipated by her father, appellee's proof that his daughter returned to his home after becoming pregnant and that he furnished the money to pay her hospital and doctor's bills when the child was born shows a revocation of her implied emancipation. Such revocation gave her father the right to recover for her loss of services and the sums he expended on account of her pregnancy. An implied emancipation may be revoked by a parent within a reasonable time. 39 Am. Jur., Parent and Child, sec. 82, p. 727; Round Bros. v. McDaniel, 133 Ky. 669, 118 S. W. 956, 134 Am. St. Rep. 482, 19 Ann. Cas. 326.

The incompetent evidence complained of is that relating to appellant's dress during the trial. Alice was asked if in the court room he appeared to be dressed in his usual manner, as when he went out with her. She replied, "No, not exactly." Then she was asked, "Do you see any diamonds on his fingers or in his tie today?" She answered, "No, he don't have them on now." While reference to appellant's personal appearance or apparel and to his lack of jewelry, at that stage of the trial when his identity was not in issue, was incompetent and the court should have sustained an objection thereto, we are unable to say it was prejudicial to appellant's substantial rights so as to require a reversal of the judgment.

The only objection to the instructions is that appellant argues he was entitled to an instruction on emancipation. We have seen that appellant's pleadings do not raise this issue. Another answer to this argument is that he never offered an instruction on this point. The rule in civil cases is that where the court offers instructions on his own motion, as he did here, his instructions must be proper as far as they go, but he is not required to instruct on the whole case and should either party desire an instruction upon a point not included in those given by the court on his own motion, such party must offer it. Whitehead's Adm'r

v. Peter Knopf's Sons, 262 Ky. 493, 90 S. W. 2d 709; Osborne v. Durbin, 301 Ky. 412, 192 S. W. 2d 198.

For the reasons given, the judgment is affirmed.