**Mary E. CARRICATO, Appellant,**

**v.**

**Mildred Louise CARRICATO et al.,
Appellees.**

Court of Appeals of Kentucky.

Nov. 13, 1964.

William Kiel, Mayer, Cooper & Kiel, Louisville, for appellant Mary E. Carricato.

William Lehnig, Duncan & Lehnig, Louisville, for appellees and cross-appellants Mildred Louise Carricato and Frank Carricato.

John L. Bennett, Hogan, Taylor, Denzer & Bennett, Louisville, for appellees and cross-appellees William E. Lange and William E. Lange, Jr.

WOODARD C. TIPTON, Special Commissioner.

A summary judgment was rendered in the Jefferson Circuit Court, Common Pleas Branch, Fourth Division, in an action in which the appellant was the plaintiff and appellees Carricato were defendants.

This action concerned an automobile collision and in the trial before a jury the matter of liability insurance was injected into the testimony, whereupon on motion a mistrial was ordered. Thereafter it was stipulated by all parties that the matter would be decided on the record by the trial judge and a summary judgment was rendered.

The trial judge held as follows:

1. The sole cause of the collision was the negligence of Mildred Louise Carricato and therefore a summary judgment was given for William E. Lange and William E. Lange, Jr.

2. That Mildred Louise Carricato was not "Emancipated" and therefore the action of her mother, Mary E. Carricato, against her must fall.

3. That the only basis of the action of Mary E. Carricato against her husband, Frank Carricato, was the family purpose doctrine, but that since the automobile was owned by, controlled by and maintained and used by Mildred Louise Carricato that the action against him must fall.

The three above questions are the only matters involved in this appeal.

On October 9, 1958, at the intersection of 16th and Main Streets, Louisville, Kentucky, the automobile operated by Mildred Louise Carricato, in which Mary E. Carricato was a passenger, collided with the automobile of William E. Lange which was being operated by William E. Lange, Jr. Mildred Louise at the time of the collision lacked two months of being twenty-one years of age. The automobile of Mildred Louise was licensed in the name of her father, Frank Carricato.

Mary E. Carricato testified that Mildred Louise was taking her to work and was proceeding south on 16th Street and just ran through the boulevard stop sign on Main Street at about twenty-five to thirty-five miles per hour when they were hit by a car. Mildred Louise testified that she did not see a stop sign and didn't slow down or stop and went on into the intersection, and at about half-way through, and in an instant or two, the cars hit. William E. Lange, Jr., testified in his deposition that he was going west on Main Street and was in the second lane from the north curb (first lane or lane next to curb was a parking lane) and was traveling twenty-five to thirty miles per hour and he saw the red car just flash in front of him—happened so quickly—saw her coming at the stop sign, but there wasn't anything he could do; that his car came to

rest at the northwest corner of the intersection and her car, after striking another car, at the southwest corner of the intersection.

In this action Mary E. Carricato sought damages for her personal injuries from all appellees. None of the appellees sought any damages. Mary E. testified as to her personal injuries, but same are not material on this appeal.

■ The matter of "Emancipation" is a question of fact and the evidence is as follows: Frank Carricato in his deposition testified that he owned an auto and his daughter owned the auto that was in the collision; that his daughter picked out the car and he helped her finance it and that she paid him back, and it was put in his name because of his credit being established; his daughter made all the purchase payments, the insurance, the gasoline and all upkeep and she was the owner of the auto; his daughter lived in his home, took her meals there, paid no board, made money contributions when needed and when he was off work she did more than her part and paid groceries and rent; since reaching twenty-one years the arrangement has not been any different; she has been on her own since leaving high school at seventeen years and she was emancipated at the time of the collision; he meant by being emancipated she had her own way and did what she pleased and that women always did that and that is what he meant; she drove her car and he drove his.

Mary E. Carricato testified her daughter was emancipated and in explanation stated that she had her own job, bought her own clothes, came and went as she pleased, did as she pleased, bought her own furniture, contributed to household expenses if needed, exercised control of her own funds, had her own bank account; after graduation from high school they have not exercised any control over her or the company she kept; she paid her own income taxes; they did not claim her as an exemption since she became eighteen years of age; there was a definite understanding between her, her husband and daughter that the daughter would be on her own after graduation from high school; she worked before she quit school and financed her last year of high school; as to church or the movies they did not exercise any control over her; she was free to come and go as she desired; she picked out and paid for her furniture; she obtained her own employment; took trips without consulting her parents; her earnings are about $300 per month; Mary E. Carricato's earnings were about $100 to $130; on cross-examination she explained "emancipation" in that her daughter had the ability to take care of herself and make her own living and she spends her own salary as she sees fit and as she pleases; she did live at home and take her meals there; she carried life insurance and her mother was the beneficiary; her daughter had never been asked to leave home; when her husband was off work it was not necessary to ask her daughter for help on expenses as she just volunteered; she has her own checking account; her daughter does not require supervision.

Mildred Louise testified she was twenty years and ten months of age at the time of the collision; she selected the auto and paid for it and maintained it; she was emancipated at the time of the collision; she was independent and had been working since high school; did not ask consent or get consent from parents for anything she did; spent her money as she pleased; had a bank account; she did have a specific understanding with her parents when she graduated that she would be on her own; selected her own clothing and personal things; made trips without consultation and even went to Virginia without consulting them; bought her a new bedroom suite; her parents have never controlled her as to her company or friends; the situation or relationship is no different now than it was at the time of the collision; she is independent and can do as she wants to do.

■ What constitutes an emancipation is a question of law, but whether an emanci-

pation has occurred in a particular case is a question of fact. 67 C.J.S. Parent and Child § 90b, page 817.

The testimony as to the facts on the matter of emancipation are as set out hereinbefore and they are undisputed; that is, no one else testified on the subject on the trial or by deposition except the three parties, Mary E. Carricato and Frank Carricato as the parents and Mildred Louise Carricato as the child.

■ Emancipation of a minor child is not presumed and the burden of proof is on the one alleging same to establish it by clear, cogent and convincing evidence either direct or circumstantial. 67 C.J.S. Parent and Child § 90, page 817.

■ In determining whether emancipation has occurred, the intention of the parent governs and the intention may be expressed either in writing or orally or it may be implied, and it is the intention of the parent and not the child that controls. 67 C.J.S. Parent and Child § 88b, page 812.

In Nichols v. Harvey & Hancock et al. (1924), 206 Ky. 112, 266 S.W. 870, it was quoted with approval as follows:

"Emancipation in turn may be classified as express emancipation and implied emancipation. Express emancipation results when the parent and child voluntarily agree that the child, able to take care of himself, may go out from his home and make his own living, receive his own wages and spend them as he pleases. An implied emancipation grows out of the parent's acquiescence in his child's working for others, receiving his pay therefor and spending same as he pleases, thereby impliedly consenting to same."

In the case of Rounds Bros. v. McDaniel (1909), 133 Ky. 669, 118 S.W. 956, the above principle of law was approved and it was also stated therein as follows:

"The doctrine of 'emancipation', * * * is a recognition of the right of the parent to relinquish control and authority over his child to whose custody and service he is entitled; or to surrender, if he so elects and desires, to his minor son, who is capable of making his own living, the right to do so, and the privilege of receiving the wages that he earns. * * * In other words, when a child has been emancipated, he occupies the same legal relation towards the parent as if he has arrived at full age."

In the case of Thompson v. Thompson (1954), Ky., 264 S.W.2d 667, it is set out that a parent can maintain a tort action against a minor child who has been emancipated. In the Thompson case the only witness testifying was the mother who sought the damages and the court held in effect that the judge did not have to believe her testimony as she was an interested witness and she was the only witness.

■ In the case at bar, the daughter was twenty years and ten months of age and not seventeen years; her father testified, whereas in the Thompson case the father did not testify. Actually the intention of the father controls as to an express emancipation, and the father testified that she was emancipated at the time of the collision, and this was corroborated by his wife, stating that there was a definite understanding that the daughter would be on her own after graduation, and this was corroborated by the daughter who stated she was emancipated. There is no one to say that there was not an express emancipation. It is difficult to conceive of a more complete implied emancipation than in this case and about all that could be lacking is that the young lady did not leave home and continued to eat her meals there, but nowhere does any opinion hold that it is required that they must leave home and not eat at home.

■■ We conclude that the sole cause of the collision was the negligence of Mildred Louise Carricato and that the trial

court correctly gave summary judgment for William E. Lange and William E. Lange, Jr., and we also conclude that since the automobile was actually owned by Mildred Louise Carricato, used by her and maintained and controlled by her that the same was not maintained by Frank Carricato for family purposes and that the trial court correctly gave summary judgment for Frank Carricato.

We further conclude that the trial court was in error in awarding a summary judgment for Mildred Louise Carricato since she was emancipated, and that part of the judgment should be reversed.

Wherefore, we recommend that the judgment of the lower court be affirmed in part and reversed in part.

The opinion is approved by the Court; the judgment is affirmed insofar as it affects the rights of Frank Carricato, William E. Lange, and William E. Lange, Jr.; the judgment is reversed on the claim of Mary E. Carricato v. Mildred Louise Carricato, with directions to try that claim on the issue of damages only.