Frank O. TURNER, Appellant,

v.

Martha H. TURNER, Appellee.

Court of Appeals of Kentucky.

May 23, 1969.

Daniel W. Davies, Newport, for appellant.

Stanley C. Moebus, Fort Thomas, for appellee.

DAVIS, Commissioner.

Appellant seeks reversal of a judgment fixing his liability for child-support pay-

ments. Three arguments are presented by appellant: (1) No judgment should have been entered because there was no formal motion for judgment; (2) the court erred in denying appellant's motion to take proof after judgment had been entered; and (3) allowance payments for daughter Charmayne should have ceased as of August 1, 1965, since she became self-supporting at that time.

The proceedings from which this appeal arises are somewhat unusual. The parties were divorced by judgment of December 8, 1961. The judgment incorporated by reference a custody, alimony, and child maintenance agreement which the parties had reached. Custody of three children of the parties was granted the appellee wife. At the time of the judgment David was seventeen; Walter, sixteen; and Charmayne, fourteen. The agreement provided that the husband pay to the wife $150 per month as maintenance for the three children, specifying:

" * * * the sum of $50.00 per month is allocated for the support of each child. Said payment of $50.00 per month for each child is to continue until such child becomes self-supporting, attains the age of 21 years, or is emancipated."

On February 19, 1965, the husband moved the court to reduce the maintenance payments on the ground that David and Walter "are now adults." The motion was scheduled for hearing on February 26, 1965.

The wife then moved the court on February 23, 1965, for a "show-cause" rule against the husband based on his alleged delinquencies in maintenance payments. This motion also was scheduled for hearing on February 26, 1965, and supported by the wife's affidavit detailing the husband's purported arrearage in payments of maintenance.

The record contains no reference to the outcome of the two-pronged hearing scheduled for February 26, 1965. Indeed, the next activity is reflected by a motion filed by the husband on January 4, 1966, seeking to be relieved of "further payment" of maintenance on the ground that all of the children "are now self-supporting and/or emancipated." No affidavit in support of the motion was made.

The wife filed her response to that motion on January 17, 1966, detailing once more the husband's failure to pay the maintenance allowances fixed in the original judgment and denying that the children were self-supporting or emancipated.

Next, on June 23, 1967, a stipulation was filed whereby the parties agreed as to just what payments had been made respecting each child. For David, who attained age twenty-one on March 2, 1965, past-due payments which accrued prior to his twenty-first birthday were stipulated as $780. For Walter, whose twenty-first birthday occurred on April 15, 1966, payment of $250 was due. For Charmayne, whose twenty-first birthday was July 5, 1968, accrued payments due were stipulated as $700. The stipulation concluded:

"It is further stipulated that the figures supplied herein may be used by the Court in preparing its Order, as agreed upon by counsel at the hearing before said Court on January 24, 1967."

On June 23, 1967, the court entered its order adverting to the stipulation, denying the husband's motion to modify the order for support, and sustaining the wife's motion for a rule against the husband to show cause for his failure to comply fully with the support orders.

Although the record does not show that a "rule" issued, it does contain the husband's "Response to Rule" which he filed July 24, 1967, and in which he set out that Charmayne had been regularly employed from August 1, 1965, to January 1, 1966, and had earned $1,495.21. He asserted his entitlement to her earnings "if said daughter is considered a minor."

On January 16, 1968, the court entered judgment in favor of the wife against the husband for recovery of an aggregate of $1,430, allotted as $780 for David's support, $250 for Walter's support, and $400 for Charmayne's support to and including February 1, 1966. The judgment further provided that the husband should continue to pay $50 per month from February 1, 1966, to and including July 5, 1968, Charmayne's twenty-first birthday.

On January 25, 1968, the husband moved the court to amend the judgment and for additional findings of fact. In substance, this motion sought to have the court make a finding as to what earnings had been received by David, Walter, and Charmayne. The motion also requested the court to adjudge whether the husband's liability for Charmayne's support could be "reactivated, reinstated or re-established on February 1, 1966, by the enrollment of Charmayne Turner as a student at Morehead State College without the knowledge, consent, or acquiescence of the defendant, Frank O. Turner." Additionally, the husband sought leave to take proof respecting the requested findings. The court overruled the husband's motion on April 30, 1968, and filed in the record a detailed opinion setting out the bases for so doing. The court noted that the husband had failed to proffer evidence during the much-delayed proceedings and pointed out that the husband's motion was tantamount to asking "to start over again." It was also pointed out that the husband had been relieved of support for Charmayne during the months of her employment.[1]

■ There was no error in the court's entering the judgment even though no formal motion for judgment was submitted. The quoted portion of the stipulation sufficiently demonstrates that the litigants knew and expected the court to enter an order. Indeed, there was no need for "further judgment" since the original judgment remained fully effective. All that was required was the court's order clarifying the disputed arrearages.

■ The court was abundantly justified in denying the husband's motion to reopen for taking proof at the late date upon which the motion was made. Certainly, the husband slept on his rights in the matter of presenting proof when he failed to offer any from February 19, 1965, through January 25, 1968. Moreover, we entertain serious doubt that the husband could have been granted the relief he sought even had he shown some earnings of the children, but we are not called upon to, nor do we, pass upon that qeustion.

■ The husband takes the position that when Charmayne voluntarily discontinued her college work in order to earn some money she became emancipated within the meaning of the original judgment, so she could not become "unemancipated" by resuming her collegiate career without his consent. We think the short answer to this argument is that there is no evidence to support the premise that Charmayne was emancipated during the brief period in which she interrupted her education in order to earn funds to continue it.

In Carricato v. Carricato, Ky., 384 S.W. 2d 85, it was noted:

> "What constitutes an emancipation is a question of law, but whether an emancipation has occurred in a particular case is a question of fact." Id. 384 S.W.2d 87, 88.

■ In Collis v. Hoskins, 306 Ky. 391, 208 S.W.2d 70, 72, we recognized that an implied emancipation may be revoked by a *parent* within a reasonable time. Since emancipation generally refers to the parent's surrender of the right to a minor's earnings and since the appellant actually did not consent or participate at all in the matter of Charmayne's temporary employment, we perceive no reason which would preclude Charmayne's revocation of eman-

---

1. Whether this was proper is doubtful, but it is not challenged on appeal.

cipation even if her activity could be so regarded in these circumstances. We entertain serious doubt that the doctrine of emancipation has application at all in situations whereby the usual family relationship has been disrupted by divorce. In any event, we conclude that there was no emancipation within the meaning of the agreement entered into by the parties and incorporated in the judgment.

Emancipation is deemed to occur automatically when a child becomes an adult. Appellant insists that in light of KRS 2.015 which reduced the age of majority from twenty-one to eighteen, effective January 1, 1965, each of the older children was automatically emancipated on that date, and Charmayne was emancipated when she became eighteen. In Wilcox v. Wilcox, Ky., 406 S.W.2d 152, we rejected that theory in face of an agreement similar to the one before us now. The Wilcox rule governs that aspect of this case.

The judgment is affirmed.