Jean SIRAVO

v.

William SIRAVO.

No. 78–126–Appeal.

Supreme Court of Rhode Island.

January 16, 1981.

Feiner, Winsten & Landman, Richard D. Boriskin, Providence, for petitioner.

Taft, McSally & McKenna, James J. McKenna, Providence, for respondent.

OPINION

BEVILACQUA, Chief Justice.

The respondent William Siravo appeals from two decrees entered by a justice of the Family Court.[1] The first decree was entered on April 10, 1978 and the second on April 17, 1978.

In the first decree, the Family Court justice found that respondent had failed to pay child support for his daughter Nancy, alimony to the petitioner Jean Siravo, and counsel fees for petitioner's representation in the original divorce proceeding.[2] Additionally, the justice found that respondent was in contempt of an earlier decree ordering him to make these payments and, therefore, respondent would be required to pay counsel fees for the current litigation.[3] Finally, the April 10 decree denied respondent's petition to amend the original decree of divorce which outlined respondent's obligations with respect to alimony and support.

The respondent immediately requested a stay of the April 10 order and announced his intention to appeal to this court. The petitioner then moved for an allowance of counsel fees for herself and her daughter to defend against the anticipated appeal. In his second decree, the Family Court justice denied respondent's request for a stay, denied petitioner's motion for counsel fees for herself, but granted counsel fees for Nancy. Because of certain jurisdictional questions involved, a complete review of the facts and travel of this case is appropriate.

Nancy Siravo turned eighteen on August 24, 1977. The final decree of divorce ordered respondent to make payments "until said minor child shall have become emancipated." Believing that emancipation occurred at age eighteen, respondent discontinued making support payments. Two months later, respondent ceased payment of alimony to petitioner. Having stopped these payments, respondent filed a petition to amend the final decree of divorce on November 10, 1977.[4] The respondent followed this petition with a voluntary petition for bankruptcy filed in the United States Bankruptcy Court for the District of Rhode Island on February 3, 1978.[5] In the meantime, respondent's petition to amend and a motion to adjudge respondent in contempt, previously filed by petitioner, were consolidated and argued before a Family Court justice on February 6, 1978.

At the February 6 hearing, respondent testified he had no income as evidence by his petition for bankruptcy and argued that he was no longer under an obligation to support Nancy because she was now "emancipated." The petitioner attempted to dispute respondent's purported inability to pay and offered testimony in an attempt to demonstrate Nancy's continued dependency on petitioner and respondent for support.[6] It was the testimony given during this hearing, and during a second hearing held on March 13, 1978, that the Family Court justice used as a basis for the decrees of April 10 and 17 which gave rise to this appeal.

1. Although a number of petitions, motions and objections were filed by both William and Jean, we shall refer to Jean as the petitioner and William as the respondent throughout this opinion.

2. These unpaid sums included $1,620 for Nancy's support, $1,140 for alimony and $986.95 for counsel fees. A final decree of divorce dissolving the marriage between petitioner and respondent had been entered on August 15, 1975. This decree required respondent to make support and alimony payments of $60 per week for each obligation.

3. To purge himself of contempt, the decree required respondent to resume regular alimony and support payments, to begin diminishing the arrearage at the rate of $15 per week, and to pay petitioner's counsel $100 per month until this debt was satisfied.

4. A subsequent petition for modification concerning Nancy's support payments was filed on February 17, 1978.

5. The respondent included petitioner and her attorney as creditors in his bankruptcy petition.

6. The petitioner testified that Nancy attended the University of Rhode Island returning home on weekends and school vacations.

In reaching his decision, the Family Court justice made a number of determinations. The justice found that the parties intended support for Nancy to be terminated when she was emancipated in fact and not necessarily when she attained the age of majority. According to the justice below, emancipation did not occur automatically at eighteen. By examining the facts, the justice found that Nancy was not emancipated because she lived with petitioner, attended college, did not work, and could not support herself independently.

■ With respect to the petition for bankruptcy, the lower court ruled that such a petition did not have the effect of discharging respondent from child support, alimony, or counsel fee obligations. In this case, the justice held that the counsel fees were comparable to alimony because they affected the petitioner's maintenance.[7] Nor was respondent relieved of liability for arrearages in the opinion of the Family Court.

Subsequently, the Bankruptcy Court discharged respondent of all listed debts including alimony.[8] This had the effect of leaving respondent in contempt of court for nonpayment of moneys, some of which had been discharged by respondent's petition in bankruptcy.

## I

The first issue before the court is whether, in light of respondent's filing of a petition in bankruptcy, the Family Court justice erred in not staying the contempt proceedings against respondent for his failure to pay his former wife's alimony and attorney fees, and his failure to make child support payments.

Under Rule 401(a) of the Federal Bankruptcy Code, a court may automatically stay, with certain limited exceptions, all actions on unsecured debts against a bankrupt.[9] One exception to the automatic stay rule is the alimony and child support provisions of Section 17(a)(7) of the Bankruptcy Act.[10] On July 18, 1977, the Bankruptcy Court for the District of Rhode Island held that the portion of section 17(a)(7) dealing with the dischargeability of alimony created an unconstitutional gender-based classification. *In re Wasserman*, 3 Bankr.Ct. Dec. 467 (D.R.I.1977).[11] Basing its finding on this decision, the same court ruled two years later that respondent's alimony arrearage had been discharged.

■ By statute, Congress has vested the federal bankruptcy courts with exclusive jurisdiction in all matters pertaining to bankruptcy.[12] Consequently, a finding that

7. General Laws 1956 (1969 Reenactment) § 15-5-16 (1980 Supp.) defines alimony "[a]s payments for the support or maintenance of either the husband or the wife." This definition does not include payment of fees to a third party attorney. Furthermore, counsel fees are specifically distinguished from alimony by use of the disjunctive 'or' in § 15-5-16. Therefore, the Family Court justice, whose authority in this area is derived from the above statute, erred when he determined that counsel fees were comparable to alimony and therefore not dischargeable.

8. *Siravo v. Siravo*, No. Bk. 78–37 (D.R.I. April 17, 1979). Although deciding previously that 11 U.S.C.A. § 35(a)(7) was constitutionally defective, *In re Wasserman*, 3 Bankr.Ct. Dec. 467 (D.R.I.1977), the Bankruptcy Court apparently withheld decision on the *Siravo* case until after release of the United States Supreme Court's decision in *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979).

9. "Rule 401. Petition as Automatic Stay of Certain Actions on Unsecured Debts.

(a) *Stay of Actions.*—The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or, the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of § 17(a) of the Act."

10. 11 U.S.C.A. § 35(a)(7), amended by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 523(a)(5) (now codified at 11 U.S.C.A. § 523(a)(5) (1979)).

11. In making this determination, the court determined only that alimony arrearages were dischargeable. The bankruptcy judge, in his ruling, did not address the issue of dischargeability of future payments. *Siravo v. Siravo*, No. Bk. 78–37 (D.R.I. April 17, 1979).

12. 28 U.S.C.A. § 1334 (1976).

an exception to Rule 401(a) is unconstitutional by a federal bankruptcy judge should not be challenged in state court. This ruling becomes the law of the jurisdiction in which it is rendered unless it is either reversed by a higher federal court or the statute is subsequently revised.[13] In Rhode Island, at the time this action arose, alimony payments were improperly included as an exception to the automatic stay provisions of Rule 401. Therefore, when respondent filed his petition for bankruptcy on February 3, 1978, the Family Court should have recognized that an automatic stay was in effect as to the contempt proceedings that arose from the nonpayment of alimony.[14] Thus, we conclude that respondent should not have been found in contempt for failure to pay alimony arrearages including counsel fees. Moreover, because the alimony arrearage and petitioner's attorney fees were found to be dischargeable by the federal bankruptcy judge, we reject the decree of the Family Court justice to the extent it is inconsistent with the discharge order. It appears that petitioner's only recourse in this unique case would be an appeal within the federal court system.

## II

■ ■ Since the contempt proceedings for nonpayment of child support were not automatically stayed, we must now determine whether respondent, who was required to support his daughter until she became emancipated, properly ceased making support payments when she became eighteen years old, and whether respondent should be required to pay her counsel fees.

In the past we have stated that a father's responsibility for the support of his children terminates once they reach the age of majority absent some exceptional circumstances or express agreement between the parties to the contrary. *Calcagno v. Calcagno*, R.I., 391 A.2d 79, 82 (1978); *Bouchard v. Bouchard*, R.I., 382 A.2d 810, 813 (1978); *Tuttle v. Tuttle*, 86 R.I. 421, 423, 135 A.2d 841, 842 (1975). Most Family Court decrees are not self-terminating but remain valid and effective until amended or terminated by an order of the court. *Calcagno v. Calcagno, supra; Bouchard v. Bouchard, supra; Ciallella v. Ciallella*, 81 R.I. 320, 325, 103 A.2d 77, 79 (1954). However, as in the present case, some decrees are self-terminating upon the occurrence of a particular event. In this case, the emancipation of Nancy Siravo was such an event.

" 'Emancipation' * * * means the freeing of the child from the custody of the parent and from the obligation to render services to him." *Vaupel v. Bellach*, 261 Iowa 376, 379, 154 N.W.2d 149, 150 (1967). And emancipation has the effect of severing the legal rights and liabilities of the parents. *Fitzgerald v. Valdez*, 77 N.M. 769, 427 P.2d 655 (1967). Although a child may become emancipated prior to the attainment of majority, emancipation has been found to occur automatically when a child becomes an adult. *Turner v. Turner*, 441 S.W.2d 105, 108 (Ky.App.1969); *but see id.* 106, 108 (support obligation not terminated where language of agreement called for support payments until child self-supporting *or* emancipated). The only exception to this automatic emancipation rule occurs when infirmity of the body or mind renders the child unable to take care of itself. *Fitzgerald v. Valdez, supra.*

General Laws 1956 (1969 Reenactment) § 15-12-1 (1980 Supp.) lowered the age of majority from twenty-one to eighteen years of age. In reviewing the statute's effect on child support decrees, we determined recently that minority is a status with no

---

**13.** The successor to § 17(a) of the Bankruptcy Act, codified at 11 U.S.C.A. § 523(a)(5) prohibits the discharge of an individual debtor from any debt: "to a spouse, former spouse * * * for alimony to, maintenance for, or support of such spouse." This subsequent revision complies with the criteria set forth in *In re Wasserman, supra.* Therefore, it appears that generally alimony is no longer dischargeable.

**14.** This automatic stay did not apply to that portion of the contempt proceedings which were brought against William for failure to make child support payments. The constitutional validity of excepting child support payments from discharge was upheld in *Wasserman.*

fixed, vested or accrued rights in future support. Alternatively, we found that minority is a status created by law and subject to change by legislative enactment. *Calcagno v. Calcagno, supra.* A second consequence of § 15–12–1 was that it also lowered to eighteen the age at which a child is considered to be legally emancipated.

On August 24, 1977, Nancy Jean Siravo attained the age of eighteen and was therefore legally emancipated. The decree ordering child support *until* emancipation had been complied with and was then terminated. The respondent properly ceased making support payments; he was no longer legally responsible for the support of his newly emancipated daughter. We reach this conclusion notwithstanding the fact that Nancy attended college and lived at home on the weekends. Under the language of this particular support arrangement and in the absence of an agreement to the contrary, respondent was not legally obligated to support his daughter or pay for her college education where she had reached majority and was not physically or mentally handicapped. *Riegler v. Riegler,* 259 Ark. 203, 532 S.W.2d 734 (1976). Furthermore, it has been recognized that "[o]rdinarily a child is emancipated at [the age of majority] even though [she] continues to live with [her] parents." *Colantoni v. Colantoni,* 220 Pa.Super. 46, 50, 281 A.2d 662, 664 (1971).

Therefore, we hold that the trial justice erred in finding respondent in contempt for ceasing to make child support payments. Additionally, because we find the contempt order invalid, respondent should not be required to pay the attorney's fees incurred by his emancipated daughter. *See Pires v. Pires,* 102 R.I. 23, 27, 227 A.2d 477, 479 (1967) (on appeal counsel fees awarded only when expressly authorized by statute, necessary or pursuant to a *valid* contempt order).

### III

The final issue to be decided is whether the trial justice erred in denying William's petition to amend the final decree regarding child support and alimony payments.

Our determination that Nancy was emancipated at age eighteen renders moot the question of whether the child support provisions of the final decree should have been amended. We shall focus our attention solely upon the alimony provisions.

The respondent testified that he was both unemployed and ineligible to collect unemployment. He testified further that he had closed both his businesses and had filed a personal bankruptcy petition three days before the February 6, 1978 hearing. The record reveals that this portion of respondent's testimony was not disputed by petitioner.

In *Masse v. Masse,* 112 R.I. 599, 313 A.2d 642 (1974), we stated that "[where] positive and uncontroverted testimony, though not inherently improbable, self-contradictory, lacking in credence, or unworthy of belief, was completely ignored by the trial justice [, t]his oversight deprives his factual determinations of the great weight to which they might otherwise be entitled * * * and it requires us to accept that testimony as conclusive." *Id.* at 602, 313 A.2d at 644–45. "[P]ositive uncontroverted testimony [, however,] may be rejected if it contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances, tend to contradict it." *Laganiere v. Bonte Spinning Co.,* 103 R.I. 191, 194, 236 A.2d 256, 258 (1967).

The Family Court justice chose to disbelieve the respondent's uncontroverted testimony as to his net worth. Moreover, the justice totally ignored the fact that the respondent had filed a personal bankruptcy petition and that any nonexempt assets he may have had would be distributed among his creditors. "[A] trier of fact who disregards a witness's positive testimony because in his judgment it lacks credibility should clearly state, even though briefly, the reasons which underlie his rejection." *Laganiere,* 103 R.I. at 195, 236 A.2d at 258. Under these circumstances, we believe that the trial justice committed error by failing to state his reasons for rejecting respondent's testimony regarding his net worth.

The respondent's appeal is sustained, and the case is remanded to the Family Court for further proceedings consistent with this opinion.