UNITED STATES of America,
Plaintiff–Appellee,

v.

David Howard CRAIG, Defendant–
Appellant.

No. 98–10162.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1999.

Decided June 29, 1999.

ALDISERT, Circuit Judge:

This appeal by David Howard Craig of the restitution order imposed for his violation of the Child Support and Recovery Act (the "Act" or "CSRA"), 18 U.S.C. § 228, requires us to decide whether restitution under the Act must be limited to the time period during which the defendant lives in a state different than that of his children and whether district courts should inquire into a defendant's ability to pay prior to ordering a restitution award. We also must determine whether the particular restitution order entered against Craig violated the Commerce Clause or the Due Process Clause of the Fifth Amendment.

We have jurisdiction to consider Craig's appeal pursuant to 28 U.S.C. § 1291.

We conclude that restitution under the Act properly includes the entire past due support obligation, that district courts need not inquire into a defendant's ability to pay prior to ordering restitution and that the restitution award against Craig was not unconstitutional.

## I.

Craig and his ex-wife were separated in 1992 and divorced in 1993. In 1992, the Superior Court of California entered an order requiring Craig to pay child support for his two daughters in the amount of $741 per month. Upon a finding that Craig's income had declined, the award subsequently was reduced to $649 per month. In July 1996, when Craig's older daughter turned 18 years of age, the amount was further reduced to $324.50 per month.

John P. Balazs, Assistant Federal Public Defender (argued), Sacramento, California, for the defendant-appellant.

Benjamin B. Wagner, Assistant United States Attorney (argued), Sacramento, California, for the plaintiff-appellee.

Craig failed to meet his child support obligation and, on June 7, 1993, the Placer County Superior Court issued a contempt order. Craig made five voluntary child support payments from June 1993 through November 1993, but made no payments thereafter. In mid–1995, Craig moved to

Before: ALDISERT,* NOONAN and TROTT, Circuit Judges.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Nevada while his daughters remained in California. In Nevada, Craig intermittently worked in construction but did not pay any portion of his child support obligation.

On January 3, 1997, Craig was indicted for violating the Act. The indictment charged that Craig:

from on or about July 31, 1995, and continuing through on or about December 20, 1996, resided in a different state with respect to his minor children ..., and, having the ability to pay, did willfully fail to pay a known past due support obligation with respect to such children as ordered by the Superior Court of the State of California for the County of Placer.

ER at 1. Craig pleaded guilty to the crime on June 5, 1997, but specifically reserved his right to appeal the amount of the restitution award ordered by the magistrate judge. In the factual basis of his plea agreement, Craig admitted only that he was financially able to pay part of the past due child support obligation that he owed. In addition, he argued to the district court that restitution should be limited to the amount incurred during the period charged in the indictment, to-wit, July 31, 1995 to December 20, 1996. The magistrate judge disagreed and ordered restitution in the full amount of arrearage sought by the Placer County District Attorney's Office, including all amounts unpaid while Craig lived in California. Craig was ordered to pay $33,968.50.

Craig appealed the order of restitution to the district court, which denied Craig's appeal and affirmed the restitution order in its entirety. This appeal followed.

## II.

▮ We first address whether restitution under the Act must be limited to the dates specified within the indictment. This court reviews the legality of an order of restitution *de novo*. *United States v.*

1. All references to the Act are to the prior version, 18 U.S.C. § 228 (1994 & Supp. IV

*Baggett*, 125 F.3d 1319, 1321 (9th Cir. 1997).

18 U.S.C. § 228[1] states, in relevant part:

(c) Upon a conviction under this section, the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing.

18 U.S.C. § 228(c). The Act defines "past due support obligation" as any amount determined by court order to be due as child support that has remained unpaid for more than one year or is greater than $5,000. 18 U.S.C. § 228(d)(1).

Craig contends that the order of restitution-in an amount exceeding those child support payments that became delinquent during the period charged in the indictment-is outside the court's limited authority to order restitution. He bases this argument on the Act's incorporation of the Victim Witness Protection Act, 18 U.S.C. § 3663, which limits restitution to the amount of damages suffered by the victim as a result of the criminal conduct charged in the indictment. *See Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) ("[T]he language and structure of the [Victim Witness Protection] Act make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.").

▮ It is clear from the language of the statute, however, that the criminal conduct in a case pursuant to the Child Support and Recovery Act is the willful failure to pay a past due child support obligation. Section 228(a) states:

Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).

In *United States v. Mussari*, 95 F.3d 787, 791 (9th Cir.1996) ("*Mussari I*"), cert. de-

1998), in effect at the time of Craig's conviction.

*nied,* 520 U.S. 1203, 117 S.Ct. 1567, 137 L.Ed.2d 712 (1997), we determined that the Act "intervene[s] and forbid[s] frustration of the obligation's satisfaction" once the preexisting support obligation "comes to wear an interstate face." This suggests that the federal statute comes into play at the moment there is an interstate character to the debt. The federal statute is not triggered by the accrual of debt subsequent to the interstate character of the support obligation. A child support obligation thus is a state-incurred debt that becomes a federal crime at the time the parent or minor relocates to another state.

Because the criminal conduct charged in the indictment includes the willful nonpayment of child support prior to the time period specified in the indictment, the statutory language of § 228(c)-"at the time of sentencing"-evinces Congress' desire to charge the parent for all unpaid child support, including support that accrued before the indictment was issued. Rather than delineate the period of restitution, the time period charged in the indictment merely provides the jurisdictional basis for a federal court to order restitution for the total amount of arrearage, including state-incurred debt. Not imposing restitution to include amounts that accrued outside the period of the indictment would appear to render the clause "as it exists at the time of sentencing" a nullity. *See Wilshire Westwood Assocs. v. Atlantic Richfield Corp.,* 881 F.2d 801, 804 (9th Cir.1989) (holding that it is improper to construe plain language in way that renders words or clauses a nullity). Accordingly, a restitution order that awards the entire past due support obligation does not run afoul of § 3663's requirement that restitution be limited to the amount of damages suffered by the victim as a result of the criminal conduct charged in the indictment.

This outcome is consistent with the Act's legislative history, which indicates that Congress enacted the statute to help states collect billions of dollars of uncollected child support by creating a federal mechanism to enforce state child support orders regardless of a parent's flight from state to state. *See* 138 Cong. Rec. H11071, H11071–11072 (daily ed. Oct. 3, 1992) (statements of Reps. Hyde, Hoyer, Mazzoli). More specifically, the Act was enacted to counter parents' efforts to evade state jurisdiction. *See United States v. Sage,* 92 F.3d 101, 103–104 (2d Cir.1996) (recounting genesis of the Act). Thus, the Act was not enacted merely to allow the federal courts to impose restitution for the period of time during which the parent was in interstate flight. Rather, the Act must be read to mandate that a federal court order restitution of the entire past due child support obligation.

### III.

◼ We next address whether the district court erred by ordering restitution in the full amount of the past due child support obligation without inquiring into Craig's ability to pay. The district court determined that Craig's guilty plea constituted an admission of his willful failure to pay a known past due child support obligation.

In the factual basis of his plea agreement, Craig admitted only that he was partially able to pay the past due child support obligation that he owed. He argues that this "partial admission" does not suffice to establish willfulness on his part. Accordingly, he seeks a federal court hearing to determine that portion of his child support obligation that he "could . . . have afforded to pay." Br. of Appellant at 18.

Thus, in addition to arguing that his total obligation to pay was limited to the support payments that accrued between the dates charged in the indictment, Appellant argues that the federal district court should have conducted a hearing, similar to a state family court, to determine his ability to pay. He cannot point to any specific decision of this court that would entitle him to such relief but instead relies on a statement in *United States v. Mussari,* 152 F.3d 1156, 1157 (9th Cir.

1998) ("*Mussari II*"): "[W]hat follows is dicta.... Enactment of the statute did not turn Mussari instantly into a federal offender. His willfulness had to be measured by what capacity he had to pay after the date of the statute's enactment."

Subsequent to the briefing and oral argument in this case, we decided *United States v. Ballek*, 170 F.3d 871 (9th Cir. 1999), which directly contradicts Appellant's argument by its instruction that a federal defendant in a prosecution under 18 U.S.C. § 228 is required to apply to the state court that issued the child support order for any reduction of the obligation. Because a state court considers a parent's ability to pay in making support awards, we interpreted the term "willfully" to include those situations in which a defendant has insufficient funds to pay the support obligation because of the parent's own failure to avail himself or herself of necessary means. The court stated that, "[g]iven this means-testing ..., a non-custodial parent should never be confronted with a situation where he is ordered to make child support payments he cannot afford." *Ballek*, 170 F.3d at 873.

We made it clear in *Ballek* that a parent who considers himself or herself unable to pay an order of child support must seek a modification of the order from the state court and not from the federal district court in a CSRA prosecution:

> A parent who is subject to an order for child support must seek a modification of the order before making such a lifestyle change. The *family court judge* can then determine whether such a change is consistent with the parent's prior obligation to support the children.

*Id.* at 875 (emphasis added). Accordingly, a "non-custodial parent who does not have the funds to satisfy the child support award, and who does not obtain a reduction or remission of the award because of inability to pay, *will almost certainly be engaged in willful defiance of the state court's child support order.*" *Id.* at 873 (emphasis added); *see also United States*

*v. Bailey*, 115 F.3d 1222, 1232 (5th Cir. 1997) ("A CSRA prosecution turns only on the defendant's violation of a state court order. It does not turn on the fairness of the order, the reasons underlying the state court's issuance of the order ... or any other matter involving relitigation of a family law issue."), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998).

By analogy, the reasoning of *Ballek* is equally applicable to excuses presented by David Howard Craig for non-payment of his child support order. In his guilty plea, Craig admitted that he knew of his past due support obligation. ER at 9. His contention that he was unable to pay seems to place the blame for all of his financial woes on his ex-wife's shoulders:

> His ex-wife refused to return the tools, business records, and other work supplies that had remained in the home.... Craig's credit was also affected by the financial consequences of the divorce.... He lost his truck.... As a result of these circumstances he was unable to maintain his business, and therefore was unable to make the ordered child support payments. He lost his contractor's license as a result of non-payment, which further impaired his ability to earn a living.... In the years since the divorce Mr. Craig moved repeatedly in search of work, living from hand to mouth and sometimes relying upon his parents for support.... He held numerous short-term construction jobs, providing intermittent income.

Br. of Appellant at 5 (citations omitted). Although he contended that he was unable to pay the entire award, Craig did not seek a modification of the child support order in state court, which had reduced Craig's monthly support obligation on two prior occasions.

We are confident that a competent state tribunal would have made a proper evaluation of his mournful apologia had it been presented to a family court prior to his

federal indictment. He chose not to do so. Accordingly, by the time he was the subject of a federal indictment, it was too late to avoid the consequences by pleading financial inability to pay the state court order.

We conclude that the teachings of *Ballek* reflect an explicit rejection of the *obitum dictum*'s suggestion in *Mussari II* that incorporation of the Victim Witness Protection Act, 18 U.S.C. § 3663, requires a federal court to consider "the financial resources of the defendant" in ordering an award of restitution under the Act. In *Ballek*, we decided that it is the responsibility of the federal defendant to make his or her presentation to the state family court to demonstrate that he or she lacks the financial resources to meet the support obligations imposed by the state court system. In *Ballek*, we did not ignore the incorporation of § 3663 into the Child Support Recovery Act; rather, we made the judgment that in considering the allocation of judicial competencies, the state court system is better-equipped to exercise expertise in child support cases relating to "the financial resources of the [parent], the financial needs and earning ability of the [parent] and the [parent's] dependents." 18 U.S.C. § 3663(a)(1)(B)(i)(II).

### IV.

Finally, we hold that the restitution order in this case did not violate the Commerce Clause or the Due Process Clause of the Fifth Amendment. We review *de novo* the constitutionality of the district court's interpretation of this statute. *United States v. DeLaCorte*, 113 F.3d 154, 155 (9th Cir.1997).

Although this court has held that the Act itself does not violate the Commerce Clause, *see Mussari I*, 95 F.3d at 790–791, Craig contends that the Act as applied in this case violates the Commerce Clause by ordering restitution beyond the offense charged against him. As we held

above, however, the Act criminalizes willful nonpayment of a preexisting child support debt at a time when the debtor is in a state different from his or her children. Because the restitution order did not exceed the amount Craig owed as a result of the offense charged against him, there is no Commerce Clause violation.

In addition, Craig's due process rights were not violated by the magistrate judge's order, which awarded restitution without considering Craig's ability to pay. Craig's guilty plea constituted an admission of all elements of the offense charged. *United States v. Cazares*, 121 F.3d 1241, 1246–1247 (9th Cir.1997). Moreover, the Act provided Craig with fair warning that restitution in the full amount of the past due child support obligation would be required upon conviction. *See, e.g., United States v. Crawford*, 115 F.3d 1397, 1403 (8th Cir.1997). Accordingly, there was no due process violation and the restitution award was not unconstitutional.

**AFFIRMED.**