**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael Andrew GILL, Defendant–Appellant.**

**No. 00–10304.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 2001

Filed Sept. 6, 2001

---

Eric V. Kersten, Assistant Federal Public Defender, Fresno, California, for the defendant-appellant.

Stanley A. Boone, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: REINHARDT, TASHIMA, and BERZON, Circuit Judges.

Opinion by Judge TASHIMA; Dissent by Judge REINHARDT

TASHIMA, Circuit Judge:

Michael Gill ("Gill") appeals the restitution imposed for his willful failure to pay child support under the Child Support Recovery Act ("CSRA"), 18 U.S.C. § 228(a). We must decide whether the restitution order properly included accrued interest as part of his unpaid child support obligation when the underlying state court order made no express mention of interest, but the applicable state law clearly mandated the accrual of interest on any delinquent payments as set forth in the order. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### I.

There is no dispute as to the facts relevant to this appeal. Gill and his ex-wife, Odettelynn Murphy, together had two children. They were born on August 4, 1981, and January 14, 1985. The couple divorced in November, 1987. On November 6, 1987, the San Joaquin County Superior Court, in California, ordered Gill to pay child support in the amount of $150 per child, per month, until the children reached the age of 18, were married, or were otherwise emancipated. The state child support order made no express mention of interest on delinquent payments. California law, however, mandates that "[u]nless the judgment provides otherwise, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due." Cal.Civ.Proc.Code § 685.020(b). State law also explicitly pro-

vides that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." *Id.* § 685.010(a). Moreover, child support arrearages, including any interest computed thereon, are enforceable until paid in full. Cal. Fam.Code § 4502.

The San Joaquin County Family Support Division administered the support order from 1987 to 1994; from 1994, the Fresno County Family Support Division has attempted to collect the child support. Gill voluntarily made intermittent payments in 1988 and 1989, totaling $1,300. Between 1991 and 1994, San Joaquin County also managed to intercept Gill's tax refunds. No further payments were collected after June, 1994. To date, payments and collections from Gill total approximately $2,926.69.[1] Gill no longer resides in California.

On December 12, 1997, Gill was charged with one count of willfully failing to pay child support, in violation of 18 U.S.C. § 228(a)(1).[2] After he consented to proceed before a magistrate judge, he pled guilty and was sentenced to five years' probation. He was ordered to pay restitution in the amount of $64,787.48, which, according to the records of the Fresno County Family Support Division, included $41,268.38 in principal and $23,519.10 in accrued interest on the delinquent child support. Gill appealed his sentence to the district court, which affirmed the order of restitution on June 14, 2000. Gill timely filed notice of appeal to this court.

## II.

Gill contends that only the principal amount of his delinquent child support, and not the accrued interest, can be included in the restitution order. We review the legality of a restitution order de novo. *United States v. Craig,* 181 F.3d 1124, 1126 (9th Cir.1999). Both the statutory text and legislative purpose of the CSRA, however, clearly refute Gill's position on appeal.

The mandatory restitution provision of the CSRA provides:

> Upon a conviction under this section, the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as it exists at the time of sentencing.

18 U.S.C. § 228(d). The term "support obligation" is, in turn, defined as:

> [A]ny amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living.

*Id.* § 228(f)(3).

■ Gill suggests that the accrued interest may not be included as part of his "support obligation" within the meaning of the CSRA because such interest was not "determined under" the state court order, which made no express mention of interest. We disagree. The plain wording of the statute defines "support obligation" more specifically as that amount "determined under a court order ... *pursuant to*

---

1. Per statutory authority, payments were applied first to the current month's child support installment, and then toward accrued interest; any remaining amount was next credited to reduce outstanding principal. Cal. Civ. Pro.Code § 695.221.

2. The statute provides, in relevant part: "Any person who (1) willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000" is guilty of a misdemeanor for a first offense. 18 U.S.C. § 228(a).

*the law of a State* ... to be due" for child support. *Id.* (emphasis added). There is no dispute that the law of California requires interest to be imposed on Gill's delinquent payments at the pre-determined statutory rate from the date that each installment became due, in accordance with the schedule and amount as set forth in the court order. Although the order did not expressly mention interest (presumably because there is no need to do so in light of applicable state law), it was nonetheless mandatorily imposed "pursuant to" state law.

▮ Gill's statutory interpretation argument would interpret "determined under" a state court support order to mean "determined in" or "determined by" that order. We do not believe that such a reading is appropriate. As the Seventh Circuit has stated:

> These are not the words Congress chose to use.... Congress could have explicitly required that there be a specific arrearage order entered by a state court or agency which establishes the exact amount owed by the wayward parent. *Congress instead required that there be a state court order which creates the underlying obligation due by the non-paying parent* .... The CSRA does not envision a formal state order or agency ruling of arrearage as a prerequisite to the exercise of federal jurisdiction.

*United States v. Black,* 125 F.3d 454, 464 (7th Cir.1997) (emphasis added). While Gill does not suggest that an arrearage order is necessary to include the aggregate amount of his delinquent principal payments in the restitution order (or to exercise federal jurisdiction), the rationale of *Black* applies here as well. Just as the cumulative principal arrearage of his state support obligation is "determined under" the court order mandating periodic payments, so too is accrued interest "determined under" the court order. When those payments are not made on the specified dates, state law automatically imposes interest on the delinquent principal. In other words, the court order need only create an underlying obligation pursuant to state law; it need not explicitly determine the exact amount due in arrears as long as state law makes the cumulative delinquent principal, and any interest accrued thereon, enforceable solely on the basis of that pre-existing obligation.

Such an understanding is supported by our language in *Craig,* where restitution was ordered for all of the defendant's unpaid child support, even though it extended beyond only those payments that became delinquent during the period charged in the indictment. *See Craig,* 181 F.3d at 1126–27. We indicated that "the statutory language of § 228(c) [the mandatory restitution provision under the CSRA as codified prior to amendment in 1998]—'at the time of sentencing'—evinces Congress' desire to charge the parent for *all unpaid child support.*" *Id.* at 1127 (emphasis added). We concluded that "the Act must be read to mandate that a federal court order restitution of the entire past due child support obligation." *Id.* Accordingly, the definition of the term "support obligation" should be interpreted to allow federal courts to order restitution in the amount of the "total unpaid" child support debt that is due "at the time of sentencing." 18 U.S.C. § 228(d).

Moreover, this understanding of "support obligation" is also consistent with the reference in the mandatory restitution provision to 18 U.S.C. § 3663A. *See* 18 U.S.C. § 228(d) ("the court shall order restitution under section 3663A"). Section 3663A(d) incorporates § 3664, which in turn mandates that "the court shall order restitution to each victim in the full

amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). Here, the losses to the children and custodial parent include not only the delinquent principal, but also the interest mandated by state statute on the delinquent principal.

As we have previously stated, "[w]hat matters is that an obligation, already imposed by state law, comes to wear an interstate face. Then, and only then, does the CSRA intervene and forbid frustration of the obligation's satisfaction." *United States v. Mussari*, 95 F.3d 787, 791 (1996) (upholding constitutionality of CSRA against commerce clause challenge). In enacting the CSRA, Congress expressly recognized that the collection of unpaid child support from out-of-state deadbeat parents had outgrown state enforcement mechanisms. *See* H.R.Rep. No. 102–771, at 6 (1992) ("the ability of those states [that passed laws making the willful failure to pay child support a crime] to enforce such laws outside their own boundaries is severely limited ... [because] interstate extradition and enforcement in fact remains a tedious, cumbersome and slow method of collection.").

The CSRA was meant to address the problem "by taking the incentive out of moving interstate to avoid payment." *Id.; see also Black*, 125 F.3d at 458 (discussing the legislative history of CSRA). Interpreting the terms of the statute so as to prevent restitution for the accrued interest on delinquent child support payments— when the interest is mandatorily imposed pursuant to state law—would both frustrate the objective of interstate collection and preserve the incentive for moving out of state when the state-incurred obligation is significant enough (as is the case here, where accrued interest accounts for over one-third of the total delinquent support obligation). To adopt such an interpretation would not only contradict the plain language of the statute, but also "would create an additional obstacle to compliance, contrary to the manifest purposes of the Act." *United States v. Collins*, 921 F.Supp. 1028, 1031–32 (W.D.N.Y.1996).

### III.

We hold that Gill's restitution order properly included the interest accrued on his delinquent child support payments, as required by state law and incorporated into the terms of the CSRA. Thus, the sentence, including the restitution order, is

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

The majority opinion adopts a harsh interpretation of the Child Support Recovery Act ("CSRA") that fails to comport with the statutory language. It is important to note at the outset that the CSRA is a criminal statute. Given its proper construction, it does not permit the inclusion of accrued interest or any other item not referred to in the underlying court order when the sentence and order of restitution are being determined. Accordingly, Mr. Gill's sentence, including the restitution order, should be reversed and his case remanded for further proceedings.

When defining the "support obligation" to be paid, the CSRA provides that it is "any amount determined *under a court order* ...." 18 U.S.C. § 228(f)(3) (emphasis added). This demonstrates that Congress intended that the determination be made pursuant to the terms of the court order awarding support payments and not pursuant to some other provision, statutory or otherwise, not specified or referred to in that order. In short, what is to be paid as a "support obligation" is what the state court order directs be paid—no more, no less. The CSRA requires the state court issuing the order to establish

934

what the support obligation is, to determine the amounts that will become due for purposes of the act. It does not permit that determination to be made post hoc by any other body; nor does it allow the determination to be made on the basis of factors external to the court order, whether provided for by statute or otherwise. To put it bluntly, the amount is to be determined "under the court order," not "under the court order as supplemented by amounts provided for elsewhere."

Contrary to the majority's assertion, an interpretation of the CSRA that follows its plain language does not work any great hardship or create any unnecessary "obstacle[s] to compliance" with the statute. Maj. Op. at 933. Rather, it only requires that judges who issue child support orders provide in those orders for all payments that are to constitute support obligations. If interest payments are to be included, it is simple enough to do so. The judge issuing the order has the clear authority to define the obligation, and the concomitant scope of the remedy under the federal statute, by setting forth the amounts that constitute the "support obligation." He can simply list interest among the amounts to be paid. Whether or not, in a particular case, the failure to keep current with interest on child support payments can result in federal criminal punishment can be determined only pursuant to the terms of the particular state court order, not by an examination of other sources which impose separate or additional financial obligations on the defendant.

The majority's reliance on the phrase "pursuant to the law of a State" to justify

its interpretation is unwarranted. My colleagues construe the "pursuant to the law of a State" language in section 228(f)(3) as modifying the "determin[ation]" of the amount to be paid. See Maj. Op. at 931. Using this construction, the majority argues that amounts provided for in state statutes, including California's provision of interest payments, are included within the "support obligation" as well as amounts provided for in a "court order." However, that is not what Congress said. Rather, a fair analysis of the statutory language demonstrates that "pursuant to the law of a State" modifies "court order or an order of an administrative process" and that its purpose and effect is to require that the order at issue be valid and enforceable under state law.[1]

Had it been Congress's intention to have "pursuant to the law of a State" modify "determined," it could simply have omitted the phrase "court order or an order of an administrative process" from the statute and defined the support obligation as "any amount determined pursuant to the law of a State." Then the amounts provided for under both court orders and state statutes would have been covered. By providing instead that the support obligation amount is to be determined "under a court order or an order of an administrative process pursuant to the law of a State," Congress was accomplishing two goals: it was limiting the amounts that constitute support obligations to those covered by the terms of the order and it was making it clear that the order, whether judicial or administrative, must be made pursuant to state law—in other words, it must be valid and legally enforceable. The majority's interpretation

1. The full definition of "support obligation" set forth in the CSRA provides that:
   [T]he term "support obligation" means any amount determined *under a court order or an order of an administrative process pursuant to the law of a State* or of an Indian tribe to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living.
   18 U.S.C. § 228(f)(3) (emphasis added).

ignores this Congressional directive and adopts instead an awkward and illogical construction of the statute that renders the "under a court order or an order of an administrative process" language superfluous in violation of well-established statutory construction principles. *See, e.g., Ratzlaf v. United States*, 510 U.S. 135, 140–41, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (noting that statutory language should not be construed so as to render certain words or phrases mere surplusage).

Congress's use of the phrase "pursuant to the law of a State" elsewhere in the statutory scheme also shows that the phrase was intended to modify "court order or an order of an administrative process" and not "amount determined." When describing the sentencing options for failure-to-pay-child-support offenders in 18 U.S.C. § 3563(b)(20), Congress again uses "pursuant to the law of a State" immediately after "court order or order of an administrative process."[2] This time, however, there can be no question that the "pursuant to" phrase modifies the "court order" phrase that immediately precedes it, in part because neither "amount determined" nor anything remotely like it appears anywhere in the sentencing provision. In § 3563(b)(20), the phrase "pursuant to the law of a State" merely requires that the order at issue be a legal one—that the order itself be made *pursuant to state law*. Because "[a] term appearing in several places in a

statutory text is generally read the same way each time it appears," *Ratzlaf*, 510 U.S. at 143, 114 S.Ct. 655, the proper interpretation of the statutory language in section 228(f)(3) is that "pursuant to the law of a State" is intended to modify "court order or an order of an administrative process." As such, it does not authorize the district court or this court to add to the terms of the state court order amounts provided for elsewhere and to redetermine the court-determined child "support obligation" accordingly.

Moreover, the cases cited by the majority fail to support a broader statutory interpretation. My colleagues' reliance on *United States v. Black*, 125 F.3d 454 (7th Cir.1997), is misplaced. While *Black* does suggest that a state court need not specifically delineate the exact amount to be paid in its order, nowhere does the case suggest that new categories of payment—such as interest—may be added to the child support order. *United States v. Craig*, 181 F.3d 1124 (9th Cir.1999), the other case upon which the majority relies, is similarly unhelpful. As the majority recognizes, *see* Maj. Op. at 12444, *Craig* concludes that a federal court should order restitution of "the entire past due child support obligation." *Craig*, 181 F.3d at 1127. This reference to "support obligation" merely brings us back to the statutory definition in section 228(f)(3) and sheds no light on the question of how to interpret its language.[3]

---

2. Specifically, 18 U.S.C. § 3563 states:

(b) The court may provide ... that the defendant ... (20) comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by the defendant for the support and maintenance of a child or of a child and the parent with whom the child is living. . . .

3. Equally unpersuasive is the majority's reliance on the CSRA's reference to 18 U.S.C. § 3663A. While 18 U.S.C. § 3664(f)(1)(A), referred to in section 3663A, does provide for restitution "in the full amount of each victim's loss," neither section 3663 nor section 3664 were incorporated into the CSRA to explain the *amount* of restitution to be awarded. Rather, section 228(d) of the CSRA already has a definition of the amount to be awarded and it is unreasonable to assume that Congress would provide a specific defini-

Because the CSRA does not authorize criminal punishment for the failure to pay interest or other amounts not provided for in the state court order, I cannot join the majority's opinion. However, even if one were persuaded that the majority's reading of the CSRA had *some* merit, it is apparent that an interpretation of the statute that precludes the addition of such interest payments is also reasonable; accordingly, the rule of lenity should apply. *See, e.g., People v. Materne*, 72 F.3d 103, 106 (9th Cir.1995) (noting that the rule of lenity applies "where a criminal statute is vague enough to deem both the defendant's and the government's interpretations of it as reasonable"); *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir.1991) ("[T]he court [should] not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.").

For all these reasons, I would reverse Mr. Gill's sentence, including the restitution order, and remand for further proceedings consistent with an interpretation of the statute that comports with its plain terms. Accordingly, I respectfully dissent.

tion of the amount to be awarded only to incorporate another section, which then incorporates a third section, which would impose a far broader definition than the highly specific definition in the original statute. *See, e.g., Morton v. Mancari*, 417 U.S. 535, 550–51,

94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").