# United States Court of Appeals
## For the First Circuit

No. 00-2200

UNITED STATES OF AMERICA,

Appellee,

v.

WALTER J. MOLAK, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

Michael J. Lepizzera, Jr. on brief for appellant.
Margaret E. Curran, United States Attorney, Donald C. Lockhart and Terrence P. Donnelly, Assistant United States Attorneys, on brief for appellee.

January 9, 2002

**SELYA, Circuit Judge.**  Lawyers can — and often do — wrangle over the meaning of even the most pedestrian language. So it is here:  the appellant insists that the term "child," as used in the Child Support Recovery Act, 18 U.S.C. § 228 (1994 & Supp. V 1999) (the Act), encompasses only persons under 18 years of age.  For its part, the government advocates a less restrictive definition.  Writing on a pristine page — no federal appellate court has heretofore construed the meaning of the disputed term — we reject the appellant's cramped construction and affirm the judgment below.

The facts are for all practical purposes conceded. Defendant-appellant Walter J. Molak, Jr. married Dorothy Caron in 1962.  The couple had two sons (born in 1966 and 1969, respectively), but no long-term future; divorce proceedings commenced in 1972.  The next year, the Rhode Island Family Court entered a final decree that incorporated the terms of a property settlement agreement and dissolved the marriage.  Pertinently, the property settlement agreement obligated the appellant to pay child support of $30 per child per week and to assume responsibility for "the continuing education of the said minor children . . . including their college fees."

Over the next decade, the appellant made few if any child support payments.  In 1982 — after the Family Court had

found him in contempt and issued a warrant for his arrest — the appellant left Rhode Island. He eventually relocated to Florida where he continued to spurn his child support obligations even though he had the wherewithal to defray them.

On February 12, 1993, the Family Court found that the appellant owed $87,163 on account of child support obligations and ordered him to pay that sum. The Rhode Island Supreme Court affirmed the arrearage order. Molak v. Molak, 639 A.2d 57 (R.I. 1994) (per curiam). Although that judgment was served upon the appellant and registered with the Florida courts, he made no payments.

On February 9, 2000, a federal grand jury in the District of Rhode Island returned a two-count indictment against the appellant. The misdemeanor count charged that during a period ending June 10, 1993, he "willfully fail[ed] to pay a support obligation with respect to a child who resides in another State, [although] such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000." 18 U.S.C. § 228(a)(1). The felony count charged that during the period from June 24, 1998 forward, he "willfully fail[ed] to pay a support obligation with respect to a child who resides in another State, [although] such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000."

<u>Id.</u> § 228(a)(3).  In time, the appellant pleaded guilty to these charges.

At the disposition hearing, held on September 11, 2000, the district court began with the base offense level specified in USSG §2B1.1(a); adjusted it upward because the appellant had willfully failed to pay more than $70,000 in child support, <u>see</u> <u>id.</u> §2B1.1(b)(1)(E); adjusted it downward for acceptance of responsibility, <u>see</u> <u>id.</u> §3E1.1(a); noted the absence of any previous criminal record; and established a guideline sentencing range (GSR) of six to twelve months.  The court imposed a six-month incarcerative term, to be followed by one year of supervised release.  The court also ordered the appellant to pay $67,163 in restitution (an amount derived by subtracting $20,000 paid by the appellant subsequent to his arrest from the figure mentioned in the Family Court judgment).  This timely appeal followed.

In this venue, the appellant argues that the lower court erred in calculating the amount of loss (and, therefore, in establishing the GSR) as well as in determining the amount of restitution owed.  The gist of these related arguments is that although the Family Court held him liable for $87,163 in outstanding child support, that sum included amounts that accrued after his sons turned 18 (e.g., college costs, unpaid

child support for the period through the date of each son's college graduation).  In the appellant's view, the Act required the district court to subtract from the Family Court's figure the education costs incurred and the unpaid support accrued for each child after that child turned 18.[1]

The appellant has a second string to his bow.  He notes that the $87,163 figure used by the Family Court includes interest and costs, and he asseverates that such items do not come within the purview of the Act.  Accordingly, the district court should have eliminated those portions of the Family Court award in calculating both the amount of loss and the amount of restitution due.

The government's response is twofold.  First, it says that we need not consider the appellant's importunings because the case is moot.  Second, it maintains that, in all events, those importunings are groundless.

We begin with the question of mootness.  Citing Spencer v. Kemna, 523 U.S. 1 (1998), the government argues that because the appellant has fully served his six-month prison sentence,

---

[1]This argument does not implicate the question of guilt as the appellant concedes that the support order in his case included enough pre-age-18 support to trigger the statutory thresholds that make his offenses federal crimes. See 18 U.S.C. § 228(a)(1) (establishing $5,000 minimum for misdemeanor offenses); id. § 228(a)(3) (establishing $10,000 minimum for felony offenses).

this appeal is moot.  The government's premise is correct — the appellant no longer is incarcerated — but its conclusion does not follow.

The <u>Spencer</u> Court reiterated the familiar bromide that to avoid mootness, "[t]he parties must continue to have a personal stake in the outcome of the lawsuit."  <u>Id.</u> at 7 (citation and internal quotation marks omitted).  The Court made plain that an incarcerated prisoner's challenge to his conviction always satisfies this requirement "because the incarceration . . . constitutes a concrete injury."  <u>Id.</u>  The Court did not imply, however, that the expiration of a prison sentence necessarily divests the prisoner of a continuing stake in the outcome of a challenge to his conviction.  This case shows quite clearly why it does not.

Although the appellant has fully served his jail time, his sentence also included a one-year term of supervised release.  He is in the midst of the supervised release term — it will not expire until March of 2002 — and, therefore, he is still subject to that constraint.  Just as a parolee would have a continuing stake in the outcome of a challenge to the underlying conviction and sentence because of the restriction imposed by the terms of the parole, <u>see</u> <u>Allen</u> v. <u>United States</u>, 349 F.2d 362, 363 (1st Cir. 1965); <u>see</u> <u>also</u> <u>Spencer</u>, 523 U.S. at

-7-

7 (dictum), so too a convicted defendant who is under an ongoing sentence of supervised release has a continuing stake in the outcome of a challenge to the underlying conviction and sentence.

To cinch matters, the appellant is facing a restitution order. The challenge that he seeks to mount directly affects the extent of that order. The appellant thus has a demonstrable pecuniary interest in the outcome of this appeal, and that interest is enough to forfend the government's claim of mootness.

Having found that a live controversy persists, we turn to the merits of the appeal. The amount of loss is integral to the sentence imposed. The sentencing guidelines contain an entry for section 228 offenses that cross-references USSG §2J1.1 (governing contempt offenses) — but the Sentencing Commission has not promulgated a guideline for section 2J1.1 offenses. Thus, pursuant to USSG §2X5.1, a sentencing court must apply the "most analogous" guideline. An application note to USSG §2J1.1 provides that "[f]or offenses involving the willful failure to pay court-ordered child support (violations of 18 U.S.C. § 228), the most analogous guideline is §2B1.1," and in that transposition, "[t]he amount of loss is the amount of child support that the defendant willfully failed to pay." USSG

-8-

§2J1.1, cmt. (n.2). The lower court treated this note as authoritative, see Stinson v. United States, 508 U.S. 36, 38 (1993); United States v. Piper, 35 F.3d 611, 617 (1st Cir. 1994), and crafted the appellant's sentence accordingly.

The appellant challenges the automatic equation of the amount of loss with the amount of child support that a defendant fails to pay. His thesis is that, as used in the Act, the term "child" refers to a person under the age of 18, with the result that Congress intended both loss and restitution under the Act to encompass only those support obligations applicable to the period prior to a child's eighteenth birthday. Because the correctness of that thesis turns on a question of statutory interpretation, we afford de novo review. Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, 171 F.3d 52, 54 (1st Cir. 1999).

As with any exercise in statutory construction, we start with the language of the statute.[2] With certain conditions not material here (e.g., place of residency, total amount of indebtedness), the Act criminalizes a willful failure to pay "a

---

[2]The indictment straddles the period before and after June 24, 1998 (the effective date of the amendments contained in the Deadbeat Parents Punishment Act of 1998, Pub L. No. 105-187, 112 Stat. 618 (1998)). For simplicity's sake, we refer to the amended version of the Act, but our comments apply equally to the earlier version.

support obligation with respect to a child." 18 U.S.C. § 228(a)(3). In addition to other penalties, the Act directs the court to "order restitution . . . in an amount equal to the total unpaid support obligation as it exists at the time of sentencing." Id. § 228(d). Importantly, the Act defines the term "support obligation" as used in these antecedent sections to mean "any amount determined under a court order . . . pursuant to the law of a State . . . to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living." Id. § 228(f)(3).

Although the Act does not define the term "child," that omission is itself revealing. In ordinary usage as it pertains to support obligations, the term "child" is not age-specific, and there is nothing in the text of the Act to suggest that Congress intended "child" to mean a person under the age of 18. Common sense suggests that, had Congress intended to use the term in so specialized a manner, it would have done so explicitly (or, alternatively, used the word "minor" to clarify the point). Because Congress used the more generic term "child" without any words of limitation, we find appealing the conclusion that Congress did not intend to confine "child" in this context to a person of a particular age.

This conclusion becomes irresistible when one considers two ancillary matters. First, Congress used the term "child" as part of its definition of "support obligation" in section 228(f)(3). That juxtaposition makes it highly probable that Congress intended the term "child" to refer to any child covered by the court-ordered support obligation at issue in a given case. This interpretation is consonant not only with the rule that proof of a state-court child support order is sufficient, in and of itself, to prove the existence of a support obligation within the meaning of the Act, but also with the related rule that a defendant in a federal case cannot relitigate the facts underlying such a support order. See United States v. Johnson, 114 F.3d 476, 482 (4th Cir. 1997) (holding state-court child support order conclusive and barring attempt to revisit issue of parentage).

Second, Congress specifically defined the amount of child support owed as "any amount determined under a court order." 18 U.S.C. § 228(f)(3). Congress's decision to make the amount specified in the state-court child support order controlling lends credence to the notion that it intended to tie the meaning of the term "child" to the particular state-court child support order that the defendant had disregarded. This sensible approach reflects the wise view that the states are in

-11-

a better position than the federal government to decide, on a case by case basis, who is a proper beneficiary of a child support order and at what point in a child's life that assistance should terminate.

The case at bar illustrates the point. Even though the duty of support under Rhode Island law generally ends when a child turns 18, there are certain recognized exceptions to that rule. See, e.g., Pierce v. Pierce, 770 A.2d 867, 870-72 (R.I. 2001) (holding that it is within the discretion of the Family Court to order child support beyond a child's eighteenth birthday); see also R.I. Gen. Laws § 15-5-16.2(b). Moreover, the Rhode Island courts will uphold more expansive terms if the divorcing parties expressly agree to them. E.g., Cooke v. Cooke, 623 A.2d 455, 455-56 (R.I. 1993); Ervin v. Ervin, 458 A.2d 342, 344 (R.I. 1983); Siravo v. Siravo, 424 A.2d 1047, 1050-51 (R.I. 1981).

Domestic relations and family matters are, in the first instance, matters of state concern, Ankenbrandt v. Richards, 504 U.S. 689, 695-97 (1992), and it would be odd for Congress to second-guess the determinations of the state courts as to the appropriate scope of child support obligations. There is no evidence that Congress intended to chart so curious a course; rather, the structure of the Act and its legislative history

indicate that Congress left such "scope" determinations to the states while focusing on a national problem — the flouting of child support orders by parents who flee across state lines. See United States v. Bongiorno, 106 F.3d 1027, 1030 (1st Cir. 1997) (citing legislative history).

The case law is not very helpful, but what there is of it favors reading the term "child" without any age limitation. The cases make clear that Congress, in passing the Act, did not intend to interfere with or modify the matrimonial laws of the several states. See id. at 1033-34. With rare exceptions, this means that federal courts, in prosecutions under the Act, should accept state-court support orders as they are written and avoid relitigating matters already decided in the family courts. E.g., United States v. Brand, 163 F.3d 1268, 1276-80 (11th Cir. 1998); United States v. Black, 125 F.3d 454, 463-64 (7th Cir. 1997); Johnson, 114 F.3d at 481-82.

If this court were to accept the appellant's premise that Congress used the term "child" to mean only offspring under the age of 18, federal courts (and sometimes juries) would have to slice and dice state-court child support orders to determine which portions of those orders relate to pre-age-18 support and which do not. This task often would be difficult if not impossible because various categories of support may be

-13-

intermixed, items may straddle a child's eighteenth birthday, or the support order may refer only to a lump sum. We will not lightly presume that Congress meant to involve the federal courts in the arduous task of dissecting state-court child support orders whenever a child's eighteenth birthday intervened. We therefore reject the appellant's contention that the term "child," as used in the Act, is limited to a child under the age of 18.

We turn briefly to the appellant's other arguments. Just as there is no principled basis for excluding court-ordered child support relating to periods after a child's eighteenth birthday from the statutory calculation, there is also no basis for excluding interest and costs. In the instant case, these items are embedded in the 1993 Family Court order and they are part and parcel of what is needed to put the appellant's former wife and his children in the financial position that they would have enjoyed had he honored his obligations and made timely child support payments. Consequently, the district court did not err in refusing to back interest and costs out of the amount of loss.

The same reasoning defeats the appellant's claim that the district court erred in fixing the amount of restitution. The Act requires that "[u]pon conviction . . . the court shall

-14-

order restitution . . . in an amount equal to the total unpaid support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(d). The Act defines "support obligation" in relevant part as meaning "any amount determined under a court order . . . pursuant to the law of a State . . . to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living." Id. § 228(f)(3). This language is plain and unambiguous. It affords no latitude for excluding post-age-18 support, interest, or costs from the required computation.[3] Since the amount determined under the 1993 Family Court order was $87,163, the sentencing court appropriately keyed the restitutionary obligation to that figure and, after crediting the appellant for the $20,000 payment that he had made, correctly fixed the amount of the restitution order at $67,163.

We need go no further. Giving the words of the Act their natural meaning and striving to effectuate Congress's discerned intent, we reject the appellant's minimalist interpretation of the statute of conviction. For aught that

---

[3]Indeed, the Ninth Circuit recently has held that a restitution order in a prosecution brought under the Act may include interest even if the underlying court support order did not order payment of interest so long as state law provides for interest. United States v. Gill, 264 F.3d 929, 932-33 (9th Cir. 2001).

-15-

appears, the district court read the Act correctly and accurately determined both the amount of loss and the amount of restitution due.

**<u>Affirmed</u>.**